IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LEIGH ANN YOUNGBLOOD-WEST,    *

    Plaintiff,    *

vs.    *

AFLAC INCORPORATED, DANIEL P.    *    CASE NO. 4:18-CV-83 (CDL)
AMOS, WILLIAM LAFAYETTE AMOS,
JR., CECIL CHEVES, and SAMUEL    *
W. OATES,

    *

    Defendants.

    *

ORDER AND PERMANENT INJUNCTION  (REDACTED)

Dr. William Lafayette Amos, Jr. asserts a claim for breach
of contract against Leigh Ann Youngblood-West for allegedly
violating the confidentiality provisions of two settlement
agreements. He now moves for summary judgment on his breach of
contract claim and seeks permanent injunctive relief (ECF No. 112).
For the following reasons, the Court grants Dr. Amos's motion for
summary judgment and permanently enjoins Youngblood-West from
violating the confidentiality provisions of the settlement
agreements to the extent described below.[1]

---

[1] Dr. Amos originally filed his breach of contract action as a separate
action, 4:18-CV-68 ("Breach Action"). The Court consolidated that action
with the above captioned action that was filed by Youngblood-West against
Dr. Amos and other Defendants, 4:18-CV-83 ("RICO Action"). Thus, the
Court treats Dr. Amos's breach of contract claim as a counterclaim
against Youngblood-West in this consolidated action.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## A FACTUAL RECORD WITHOUT DISCOVERY

Dr. Amos filed his motion for summary judgment before the parties conducted any discovery. Although this may not be the norm, it is certainly authorized under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(b) (unless local rules or a court order direct otherwise, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"). Youngblood-West has the right to seek discovery if she can establish that discovery is necessary to adequately respond to Dr. Amos's summary judgment motion. *See* Fed. R. Civ. P. 56(d) (if the nonmoving party shows by affidavit or declaration that it

"cannot present facts essential to justify its position," the Court may defer or deny the motion for summary judgment, permit further discovery, or issue any other appropriate order). But, in the affidavit or declaration, "the nonmoving party must give more than 'vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1063 (11th Cir. 2015) (quoting *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 844 (11th Cir. 1989)(per curiam)). And, "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed [by the nonmoving party] to withstand a . . . motion for summary judgment." *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1029-30 (5th Cir. 1983).

Youngblood-West claims that she needs discovery before she can adequately respond to Dr. Amos's motion for summary judgment. Having reviewed her request, the Court finds that she has not shown that discovery would likely produce facts needed to respond to the pending summary judgment motion. The Court intends to base its decision in part on Youngblood-West's verified complaint, assuming her factual allegations to be true and construing reasonable inferences in her favor. Thus, she certainly does not need discovery to confirm the facts that she alleges in her complaint given that the Court is going to accept those facts for purposes

of the pending motion. Moreover, the essential foundation of Dr. Amos's motion for summary judgment consists of the two settlement agreements, which are attached as exhibits to both Youngblood-West's and Dr. Amos's complaints. Youngblood-West has never disputed that the material portions of those two documents represent the relevant settlement paperwork that memorializes the two agreements. She simply argues that they are not enforceable because Dr. Amos did not sign them, did not assent to them, did not have the capacity to assent to them, and participated in a conspiracy to procure them by fraud and coercion.

For purposes of the present motion, the Court accepts as true the allegation that Dr. Amos did not actually sign the agreements. But the conclusory arguments that Dr. Amos did not otherwise assent to them or have the capacity to assent to them are inconsistent with Youngblood-West's other factual allegations in her pleadings in this action, and she has not even bothered to explain the inconsistencies in her affidavit. She certainly does not need discovery to create a factual dispute on these issues when she has already stated her factual position on them, which the Court accepts as true for purposes of the pending motion. And, even if she could create a factual dispute on any of these issues, she would perhaps win the battle but not the war because it is absolutely clear that Dr. Amos would be a third-party beneficiary to the agreements and have the legal right to enforce them,

notwithstanding any alleged lack of capacity or assent on his part. Furthermore, Youngblood-West acknowledges that she has never tendered the consideration she received under the agreements, and, even if her excuses for failing to do so are true, they do not provide a legal basis for now rescinding the settlement agreements based on fraud. Consequently, discovery will not assist her with regard to this claim for avoiding her responsibilities under the agreements.

The Court notes that it has addressed the enforceability of these settlement agreements on two previous occasions in this litigation. It found the agreements enforceable for the purpose of deciding Youngblood-West's motion to dismiss Dr. Amos's breach of contract claim; it also found them enforceable when deciding Dr. Amos and other Defendants' motions to dismiss Youngblood-West's claims against them in this action. Breach Action, Order (Aug. 7, 2018), ECF No. 19 at 7-10; RICO Action, Order (Oct. 22, 2018), ECF No. 88 at 33-41. The Court also previously decided that Youngblood-West is not entitled to discovery in this action to decide the pending summary judgment motion. As the Court previously noted in its order rejecting Youngblood-West's Rule 56(d) declaration, the issues remaining to be decided on summary judgment "either involve pure questions of law and/or do not involve genuine factual disputes." RICO Action, Order (Dec. 19, 2018), ECF No. 118 at 2. The Court has "previously determined the

enforceability of the agreements, taking Youngblood-West's allegations as true." *Id*. And, it is "not necessary for her to engage in discovery to confirm those allegations" when the Court considers them established for purposes of the pending motion. *Id*.[2] As to her request that she needs to discover matters apart from what she alleged in her pleadings and what is indisputably established by the settlement agreements, the Court finds that the information she seeks to discover is not material to the issues raised by Dr. Amos's present motion for summary judgment. The correctness of this finding should become readily apparent in the Court's discussion in the remainder of this order.

THE FACTS

Viewed in the light most favorable to Youngblood-West, the record reveals the following.

Around January 5, 1984, ████████████████████

███████████ ██ ██ ████████ ██████. Youngblood-West later

---

[2] The Court denies Youngblood-West's Rule 56(d) request *de novo* in today's order. But to the extent that her request is construed as a motion for reconsideration of the Court's previous order denying such request, Order (Dec. 19, 2018), ECF No. 118, that motion is also denied. Generally, motions for reconsideration will only be granted if the movant demonstrates that (1) there was an intervening development or change in controlling law, (2) new evidence has been discovered, or (3) the court made a clear error of law or fact. *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1378 (M.D. Ga. 2009); *see also* Local Rule 7.6. Because Youngblood-West has not made this showing, the Court denies the motion for reconsideration.

entered into two settlement agreements that released her claims against Dr. Amos. Those agreements form the basis of this action.

The first agreement was signed on August 28, 1992. In that agreement, Youngblood-West and her late husband released Dr. Amos and Medstrategies, Georgia, Inc. ("Medstrategies"), a for-profit entity that Dr. Amos is CEO and CFO of, from claims ███████ ██ ████████████████████████████████████████████████████████ ███ ████ ████ ██████ ████████ ███ ██ █ ██ █ ██ ██████ █ ███ ███████████████ ██ ██ ████ █████ █ ████ Breach Action, Compl. Ex. A, 1992 Settlement Agreement 1, ECF No. 2-1. In exchange for the release, Youngblood-West was promised ███████. *Id.* The 1992 settlement agreement also contained a confidentiality provision stating, "[Youngblood-West and her late husband] further covenant that neither they nor their counsel shall reveal to anyone the alleged acts or omissions giving rise to their claims against any party released hereby, or any other matter relevant to such claims, the fact or existence of this release agreement, any of the terms of this release agreement or any of the amounts, numbers or terms and conditions of any sums payable to the undersigned hereunder." *Id.* at 2. A provision of the agreement also stated, "[i]n the event of a breach of any of the terms or provisions of this release agreement, [Youngblood-West and her late husband] shall not be bound by their covenant or agreement of confidentiality contained in this release agreement." *Id.*

Youngblood-West signed the agreement. Dr. Amos did not.[3] Youngblood-West received the payment due under the agreement and has not tendered or attempted to tender this settlement payment back to the payor before filing suit.

Later, on November 19, 1993, in exchange for ████████, Youngblood-West and her late husband entered a second settlement agreement releasing a number of parties, including Dr. Amos and Medstrategies, from these same and additional claims. Breach Action, Compl. Ex. B, 1993 Settlement Agreement ¶ 2, ECF No. 2-2. This agreement also had a confidentiality provision which stated that in exchange for ██████, Youngblood-West and her late husband "shall maintain at all time the confidentiality of this agreement and shall not reveal to anyone, including other attorneys . . . , the alleged acts or omissions giving rise to their claim against any party released hereby, or any other matter relevant to such claims, [or] the fact or existence of this release agreement." *Id.* ¶ 6. The agreement also states that "[Youngblood-West and her late husband] acknowledge that the damage to the parties being released hereby would be irreparable and difficult to ascertain and that their remedy at law would be inadequate." *Id.* ¶ 7. It

---

[3] There is a separate signature page attached to the end of the 1992 agreement with Dr. Amos's signatures on it. 1992 Settlement Agreement 4. But, Youngblood-West contests the authenticity of this separate signature page. Because the Court must view the facts in the light most favorable to Youngblood-West, it does not consider this page part of the agreement for purposes of this motion.

contemplates that if Youngblood-West or her late husband breach the confidentiality provision in the agreement, "the parties paying the consideration for this confidentiality agreement shall be entitled to receive . . . ███████ . . . which sum [Youngblood-West and her late husband] agree is a reasonable pre-estimate of the damages from such a breach." *Id.* The agreement also contemplates that the released parties could obtain a "permanent injunction . . . against [Youngblood-West or her late husband] restricting them from violating the terms of this confidentiality agreement." *Id.* ¶ 8. The agreement states, "[e]ach of the undersigned acknowledges and agrees that there is a prior settlement and release and confidentiality agreement between the undersigned and [Dr. Amos], which prior agreement does and shall remain in full force and effect." *Id.* ¶ 11. And, the agreement states that "[t]his agreement and the prior one may not be modified unless it is done so in writing signed by the party to be bound." *Id.*

Youngblood-West does not dispute that she received the settlement payment under this 1993 agreement and did not tender the payment back to the payor before filing this suit. Youngblood-West, her late husband, and their attorney all signed the agreement. No other party signed the agreement. Youngblood-West received a check from ████████████ ██ █████████ ██ ████ ████ *Id.* at 8 (depicting a copy of the check with the

9

signatures of Youngblood-West, her husband, and their attorney underneath). Dr. Amos's signature appears on the signature line of this check. *Compare id.*, *with* 1992 Settlement Agreement 4 (showing a signature block with Dr. Amos's signature that matches the signature on the ██████████████).[4]

On March 16, 2018, Youngblood-West's attorney sent a letter to two attorneys at the law firm of Alston & Bird discussing ██████████████ ████████ ████ ██████ ██████ ██████ ████████ ████████████████████████████. Breach Action, Compl. Ex. C, Letter from D. Joffe to L. Cassilly and M. Gill (Mar. 16, 2018), ECF No. 2-3. Then, on April 14, 2018, Youngblood-West's attorney emailed several Alston & Bird attorneys a 51-page draft RICO complaint against Aflac, Dr. Amos, and others. Breach Action, Compl. Ex. D, Email from D. Joffe to J. Grant, M. Gill, L. Cassilly, S. Pryor, and J. Bogan (Apr. 14, 2018), ECF No. 2-4; *id*. Ex. E, Proposed RICO Compl., ECF No. 2-5. The draft complaint also included accusations regarding ████████████████████████ ████████████████████████████████████████████ ████████. *See generally* Proposed RICO Compl.

---

[4] The Court considers the signature page of the 1992 settlement agreement for the limited purpose of comparing Dr. Amos's signatures on that page to the signature on the ██████████ ██████. Although Youngblood-West contends that the signature page was not part of the 1992 agreement, she does not contend that the signatures on that page are not Dr. Amos's signatures.

After this correspondence, Dr. Amos filed an action for breach of the confidentiality provisions of the 1992 and 1993 settlement agreements. After that action was filed, Youngblood-West filed her proposed RICO complaint as a separate action, the present action. The Court subsequently consolidated the two cases, treating Dr. Amos's claims against Youngblood-West as a counterclaim in this present action. The Court previously dismissed all of Youngblood-West's claims in this action, and only Dr. Amos's counterclaim remains pending. Dr. Amos withdrew his claim for damages on his breach of contract claim; but he seeks permanent injunctive relief enforcing the confidentiality provisions of the settlement agreements. Dr. Amos now moves for summary judgment on his claim, contending no genuine and material factual disputes exist and the settlement agreements are enforceable as a matter of law.

DISCUSSION

Dr. Amos is entitled to summary judgment on his breach of contract claim. Under Georgia law, the elements of breach of contract are: "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (quoting *Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008)). For there to be a breach, there also must be a valid contract. Here, the elements of breach

and damages are indisputably met.  By disclosing information concerning ██ ███ █████ █████ ██ █████████ █████████ to Alston & Bird attorneys in the March 6th letter and the April 14th email, Youngblood-West, through her attorney, breached the confidentiality provisions of the 1992 and 1993 settlement agreements.  And, Dr. Amos suffered resulting damages because he no longer has the privacy bargained for under the agreements. Youngblood-West nevertheless argues that the agreements are not enforceable by Dr. Amos, ██ ███ █████ █████ █████ ███ ████ ██ ███ █████████ █████████ ██ ██ ████ ████.  Her arguments lack merit and may well be frivolous, but that determination remains for another day.

Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.  The Court previously found that the 1992 and 1993 settlement agreements are valid and enforceable contracts under Georgia law.  *See* RICO Action, Order (Oct. 22, 2018), ECF No. 88 at 33-41; Breach Action, Order (Aug. 7, 2018), ECF No. 19 at 7-10.  Youngblood-West now asks the Court to reconsider this decision, arguing that there is a fact dispute concerning whether two or more parties assented to the terms of the agreements. Although she concedes that she assented to the agreements, she

argues that the evidence in the record does not establish that Dr. Amos assented to be bound by them. Specifically, she alleges that Dr. Amos never signed the 1993 agreement and that his signature on the 1992 agreement is not authentic.

For purposes of the pending motion, the Court accepts as true the allegations that Dr. Amos did not sign the agreements. The Court previously held that Dr. Amos sufficiently manifested his assent to the terms of the agreements by performing under the contract and paying the settlement payments. Breach Action, Order (Aug. 7, 2018), ECF No. 19 at 7-9. The Court found that the ███████ check attached to the 1993 agreement was evidence that Dr. Amos paid pursuant to the terms of the 1993 agreement. *Id*. Youngblood-West now asks the Court to reconsider this finding because the ████████████████████████████████████████ ██████ ████ ████ ████ ████ █████. Therefore, Youngblood-West contends, there is a fact dispute about whether *Dr. Amos* ever actually performed under the contract, thereby manifesting his assent to be bound by the terms of the agreement and becoming a party to the agreement.

The Court notes that Youngblood-West had the opportunity to allege in her complaint or to file an affidavit in opposition to summary judgment stating that she never received the consideration contemplated by the two settlement agreements. She did not do so because she has never disputed that she was paid pursuant to the

two settlement agreements. Thus, there is no question that the contract was performed, i.e., she got what she bargained for—a total of ███████. But in a desperate attempt to undo the deal, her counsel contends that because Dr. Amos allegedly failed to sign the agreements and because the check used to pay the consideration for the 1993 agreement was drawn on Dr. Amos's ████████████████████████████████████████, she is not bound by the terms of the settlement agreements.

Although Youngblood-West's counsel seems to acknowledge that the mere absence of Dr. Amos's signature does not relieve Youngblood-West from her obligations under the contract that she undisputedly signed, the Court finds it appropriate to nevertheless begin its discussion with that fundamental principle. The law of the State of Georgia (and likely every other jurisdiction in the country) clearly establishes that the absence of a promisee's signature does not relieve the promisor from her obligations under a contract. A party's assent to the terms of an agreement may be established by means other than that party's signature. This principle has Georgia precedential roots that stretch back to antebellum days. In fact, it was originally planted in the very first volume of the Georgia Reports. *See Jernigan, Lawrence & Co. v. F.D. Wimberly,* 1 Ga. 220, 221-22 (1846) (finding a contract was not invalidated by the plaintiff's failure to sign it). This principle flourished through the ensuing years

and is part of our modern contract jurisprudence. *See, e.g.*, *Rogin v. Dimensions S. Realty Corp., Inc.,* 264 S.E.2d 555, 556 (Ga. Ct. App. 1980) ("Assent to the terms of a contract may be given other than by signatures." (quoting *Cochran v. Eason*, 180 S.E.2d 702, 704 (Ga. 1971)). Thus, the lack of Dr. Amos's signature on the settlement agreements is not dispositive of whether the agreements are enforceable.

The absence of signature simply eliminates what is often the clearest sign of assent to an agreement. But other evidence of assent can certainly be relied on to establish that the parties to an agreement actually assented to it. One well-recognized and persuasive indication of assent is performance of the promises in the agreement. It would make little sense for someone to comply with a promise that he did not make. Thus, the law recognizes that performance can establish assent. This principle too has deep judicial roots. In *Brown v. Bowman,* 46 S.E. 410, 410 (Ga. 1903), the Georgia Supreme Court in an opinion by Justice Fish explained, "[a] contract is often such that, until something is done under it, the consideration is imperfect; yet a partial performance, or a complete performance on one side, supplies the defect." *Id.* (quoting Bishop, Contracts, § 87). Justice Fish continued, "[i]f, for example, one promises another, who makes no promise in return, to pay him money when he shall have done a specified thing, if he does it, not only is the contract executed

on one side, but also the consideration is perfected, and payment can be enforced. And, in more general terms, when from any cause the party from whom the consideration moves is not compellable to render it, if he does render it, the contract becomes thereby perfected." *Id*. (quoting Bishop, Contracts, § 87). Then Justice Fish concludes, "[t]he test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn." *Id*. at 410-411 (quoting Hammond on Contracts, p. 683). This fundamental principle has not tarnished with age. As this Court explained in its earlier order finding the settlement agreements here to be enforceable, the principle is well established. *See Comput. Maint. Corp. v. Tilley*, 322 S.E.2d 533, 537 (Ga. Ct. App. 1984) ("If one of the parties has not signed [a contract], his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." (quoting *Cooper v. G.E. Constr. Co.*, 158 S.E.2d 305, 308 (Ga. Ct. App. 1967))); *Gruber v. Wilner*, 443 S.E.2d 673, 676-77 (Ga. Ct. App. 1994) (finding party's partial performance of consulting and profit sharing agreements bound the party to those agreements even though the party had not signed them).

So, Youngblood-West faces a dilemma.  She admits that she signed the settlement agreements and that she received the consideration called for in the agreements.  Those agreements clearly indicate that Dr. Amos is a released party under the agreements ███████████████████████████████████████.  No amount of discovery would change these facts.  They are undisputed. In light of these undisputed facts, Youngblood-West must navigate clearly established legal principles that provide that Dr. Amos's lack of signature on the agreements does not render them unenforceable and that performance of the obligation in the agreement may establish assent to the agreement by a non-signatory to the agreement.

Youngblood-West's counsel responds with a strained, incredulous argument that even though it is undisputed that performance occurred, i.e., Youngblood-West was paid the entire amount she was promised under the agreements, he needs discovery to determine whether Dr. Amos was actually aware of that performance (or even the existence of the agreements) and whether he assented to them on his own behalf.  Of course, Youngblood-West could have pointed to facts based on her personal knowledge as a party to the agreements that might lead a reasonable jury to conclude that Dr. Amos knew nothing about the agreements.  But she would have had to swear under penalty of perjury that what she stated was true.  And that may be difficult given that she alleges

in her RICO and fraud lawsuit against Dr. Amos that he participated in fraudulently ████████ procuring the settlement agreements. It is hard to understand how he did not assent to agreements that she claims he participated in procuring.

Youngblood-West's allegations that Dr. Amos knowingly participated in the fraudulent procurement of the settlement agreements also directly contradict any conclusory allegation that he did not have the mental capacity to be able to contract. In her desperate attempt to avoid the very contracts that she knowingly executed, she now tries to convince the Court that Dr. Amos was completely aware of what he was doing when he got *her* to sign the agreements, but he had no capacity to understand what he was doing when *he* agreed to the settlements. This attempt to avoid summary judgment goes well beyond the assertion of arguments in the alternative; the two positions are irreconcilable. And, even if Youngblood-West could discover evidence of Dr. Amos's mental incapacity, that evidence ironically could provide another basis for throwing out Youngblood-West's fraudulent procurement claims against Dr. Amos based on his lack of knowledge and would do nothing to Dr. Amos's ability to enforce the settlement agreements as an intended third-party beneficiary of them. *See infra*, note 8.[5]

---

[5] Youngblood-West has also consistently claimed that Dr. Amos's attorney and brother-in-law, Cheves, helped negotiate the settlements on his

Youngblood-West also ignores the undisputed fact that consideration was paid with a check that Dr. Amos actually signed. The fact that ███████████████████████████████ does not negate his active involvement in signing the check. Even if he signed the check in his capacity as ██████████████████████, he signed a check for ████████ to Youngblood-West. It ignores reality to speculate that he did so without knowing what it was for, particularly given the undisputed fact that the 1992 and 1993 agreements clearly identify Dr. Amos as a released party. At one time, Youngblood-West even acknowledged what she and Dr. Amos clearly knew. She *admitted* that Dr. Amos was a party to the 1992 agreement when she signed the 1993 agreement acknowledging "that there [was] a prior settlement and release and confidentiality agreement between [her] and William L. Amos, Jr., M.D. which prior agreement does and shall remain in full force and effect." 1993 Settlement Agreement ¶ 11. It was not until over 20 years later when she engaged her current counsel that opaqueness suddenly overcame clarity. Waiting that long to suggest that Dr. Amos did not assent to the agreements for which she received ████████ defies common sense.[6] All of the evidence points to the inescapable

---

behalf. Thus, the undisputed facts establish, at a minimum, that the agreements were negotiated by Dr. Amos's agent on his behalf. *See infra* note 7. Youngblood-West is not entitled to discovery to impeach her own factual allegations.

[6] ████ ██████ ████████ ████ ████████████████ ███████████████████, but she filed no affidavit indicating that this ████████ prevented her from earlier reaching the

conclusion that Youngblood-West knows that Dr. Amos knew about the settlement agreements and assented to them. There is no reasonable basis for concluding that discovery would yield any evidence to the contrary.[7]

The present record establishes that Dr. Amos and Youngblood-West assented to settling her claims against him in exchange for money. As part of that settlement, Youngblood-West agreed to keep the settlement confidential. Youngblood-West was paid the full consideration called for under the agreements. She had a legal duty to comply with her promises. When she did not, Dr. Amos had the legal right to sue her to make her do what she promised to do. It is that simple, and no amount of discovery or creative lawyering would change that.[8]

---

conclusion that Dr. Amos did not assent to the settlement agreements. And while this delay is certainly not dispositive, it adds confirmation that no one thought Dr. Amos was not on board with the settlement. Her current counsel's argument to the contrary is particularly dubious given that she was represented by counsel in the second settlement who she has not criticized (at least not yet), and that counsel certainly would not have advised her to enter into a settlement with a party who did not assent to it.

[7] Although unnecessary to the Court's holding today, the Court observes that even if Dr. Amos was not directly involved in the execution of the final agreements, he could certainly assent through his agents. *See Levy v. Cohen*, 4 Ga. 1, 13 (Ga. 1848) ("To consummate a contract there must be mutuality of assent to a certain and definite proposition. But this may be done, not only personally, where the parties are present, but by means of agents . . . ."). Youngblood-West clearly alleges that Dr. Amos's "agents" procured the settlement agreements on his behalf in her RICO complaint.

[8] The Court notes that even if Youngblood-West could produce evidence that she did not actually have an enforceable contract with Dr. Amos, she would still have a valid agreement with ██ ████████. In that case, Dr. Amos would nevertheless have a claim as an intended third-party

20

Remarkably, Youngblood-West's "lack of assent" argument is her strongest argument for avoiding her responsibilities under the settlement agreements. And, it borders on violating Rule 11 of the Federal Rules of Civil Procedure. Her remaining arguments likely cross the line. They appear to be the product of creative brain-storming sessions unrestrained by Rule 11. Most of them have previously been rejected by the Court. Because it is important to inform counsel when his conduct crosses the line, the Court takes the time to address these frivolous arguments. Youngblood-West objects to Dr. Amos relying on the settlement agreements attached to his complaint because Dr. Amos states in the complaint that they are "copies" of the settlement agreements, not that they are "true and correct" copies. But, Youngblood-West admits to signing settlement agreements in 1992 and 1993 and does not contend that the documents attached to Dr. Amos's complaint are not those agreements.[9] Youngblood-West also does not argue that the settlement agreements cannot be presented in a form that

---

beneficiary of that contract and be entitled to injunctive relief to enforce it since it is evident from the face of the agreement that it was intended to benefit him. *See* O.C.G.A. § 9-2-20(b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."). The Court also notes that, because Dr. Amos could enforce the agreement as a third-party beneficiary, the question of whether he personally had the capacity to contract at the time the agreements were made is irrelevant.

[9] Although Youngblood-West disputes the authenticity of the signature page to the 1992 agreement, the signature page is immaterial to the validity of the agreement as previously discussed. Youngblood-West does not contend that the rest of the 1992 agreement is different than what she originally signed.

would be admissible in evidence at trial. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence."). Youngblood-West's argument that summary judgment should be denied on this basis is frivolous.

Counsel for Youngblood-West renews arguments previously made in this proceeding that the agreements are unenforceable due to lack of mutuality (RICO Action, Order (Oct. 22, 2018), ECF No. 88 at 34-37), Georgia public policy (Breach Action, Order (Aug. 7, 2018), ECF No. 19 at 10-12), the absence of counterparty signatures (*id.* at 9-10), and exceptions to the tender requirement (RICO Action, Order (Oct. 22, 2018), ECF No. 88 at 37-41). The Court has previously rejected all of these arguments and rejects them again. They have no merit.

Further, Youngblood-West's counsel incredibly argues that Youngblood-West can unilaterally revoke or modify her nondisclosure obligations under the settlement agreements. This argument demonstrates her counsel's lack of restraint in avoiding the assertion of frivolous positions. Counsel actually argues that Youngblood-West's own breach of the confidentiality provisions in the 1992 settlement agreement releases her from all her obligations under that agreement because it states "[i]n the event of a breach of any of the terms or provisions of this release agreement, the undersigned shall not be bound by their covenant or

agreement of confidentiality contained in this release agreement."
1992 Settlement Agreement 2. Interpreting this language to permit
Youngblood-West to escape her confidentiality requirements by
violating those very same confidentiality requirements is absurd.
When read in the context of the entire agreement, the agreement
releases Youngblood-West from her obligations under the agreement
if the counterparties breach their *payment obligation*, not when
she breaches her confidentiality obligations. *See Cahill v. United
States*, 810 S.E.2d 480, 483 (Ga. 2018) (finding a settlement
agreement "must be read reasonably, in its entirety, and in a way
that does not lead to an absurd result" (quoting *Office Depot,
Inc. v. Dist. at Howell Mill, LLC*, 710 S.E.2d 685, 689 (Ga. Ct.
App. 2011))).

Counsel for Youngblood-West also maintains that she can
unilaterally modify the 1993 agreement to delete her
confidentiality obligations. She notes that the 1993 settlement
agreement states that it "may not be modified unless it is done so
in writing signed by the party to be bound." 1993 Settlement
Agreement ¶ 11. She argues that she is a "party to be bound" and,
therefore, can modify her own obligations under the agreement as
long as she does it in writing. Again, Youngblood-West's
interpretation of this language is absurd. Instead, the "party to
be bound" language obviously contemplates the signature of the
party adversely impacted by the modification. Moreover,

23

Youngblood-West's unilateral modification of the settlement agreement would be unenforceable because it lacks new consideration. *See Carroll v. Bd. of Regents of Univ. Sys. of Ga.*, 751 S.E.2d 421, 425 (Ga. Ct. App. 2013). Counsel's arguments are frivolous.

In summary, the undisputed material facts establish that Youngblood-West breached the settlement agreements with Dr. Amos. The "facts" that Youngblood-West seeks to develop in discovery are not material to the issues to be resolved in deciding Dr. Amos's pending summary judgment motion. Dr. Amos is entitled to judgment as a matter of law and his motion is accordingly granted.

PERMANENT INJUNCTION

Having found that Youngblood-West breached the confidentiality provisions of the settlement agreements as a matter of law, the Court further finds that the appropriate remedy for those breaches is a permanent injunction. Accordingly, the Court enters a permanent injunction as follows:

1. Permanent injunctive relief is required because the remedies available at law, such as monetary damages, would not be adequate if Youngblood-West breached the confidentiality provisions of the 1992 and 1993 settlement agreements again in the future. If Youngblood-West publicly discloses her allegations related to the claims settled in the 1992 and 1993 settlement agreements and subject to the confidentiality

provisions in the settlement agreements, then Dr. Amos permanently will have lost the value of the confidentiality provisions in the settlement agreements. Because no amount of money can compensate Dr. Amos for the harm that would result from violations of the confidentiality provisions in the settlement agreements, Dr. Amos would suffer irreparable harm from any future violation of the confidentiality provisions.

2. The Court further finds that a balancing of the parties' interests tips sharply in Dr. Amos's favor. Although Youngblood-West may have some interest in publicly airing her allegations, Youngblood-West received and has not offered to return the consideration she received in exchange for her promise to release her claims against Dr. Amos and maintain the confidentiality of her allegations. Dr. Amos's privacy interest in enforcing the confidentiality provisions in the settlement agreements outweighs any hardship to Youngblood-West caused by requiring her to comply with the contractual obligations to which she agreed in exchange for consideration she has retained.

3. The Court further finds that the public interest would not be disserved by a permanent injunction. Protecting Dr. Amos's benefit of his bargain by permanently barring Youngblood-West from violating the settlement agreements supports the

public's strong interest in the enforceability of contracts and the public's strong interest in encouraging and preserving the finality of settlements.

4. Accordingly, Youngblood-West, and any person acting on her behalf or in concert with her (including her counsel), shall not disseminate, disclose, or discuss with anyone the subject matter of the claims Youngblood-West settled in the 1992 and 1993 settlement agreements unless permitted to do so by Court order, except that Youngblood-West is not prohibited by this order from reporting any crime to any law enforcement agency charged with investigating unlawful criminal conduct or from discussing these matters with her legal counsel who is also bound by this injunction.

5. In accordance with the 1992 and 1993 settlement agreements, this permanent injunction may be enforced by Dr. Amos and by his heirs, executors, administrators, or assigns.

## CONCLUSION

For the foregoing reasons, the Court grants Dr. Amos's motion for summary judgment (ECF No. 112) and enters the permanent injunction described in this order. This permanent injunction replaces the preliminary injunction previously entered in this action. Restrictions regarding the filing of items under seal in this action continue to apply to filings in this action.

## RULE 54(b) CERTIFICATE

After today's order, all of the claims asserted by Youngblood-West in her complaint in this action and all of the claims asserted by Dr. Amos in his counterclaim against Youngblood-West have been decided. Only the following motions remain to be decided: the parties' motions for sanctions or reasonable expenses under Rule 11 (RICO Action, ECF Nos. 21, 49, 56), ███████████████ ██████ ████████████████████████████████████████████████ ███ ███ ███ ███ ███ ███ ███ ███ ███ ███ ██ ███ ████ ████ ███ ████ ██ ███ ███ ███ ███ ███ █ ████ ████ ██ ██ ███ ███ ███ ███ ███ ████ ████ ██ ███ █ ██ ████. The Court intends to decide these pending motions in due course; but the Court finds that an appeal of the Court's previous dismissal of Youngblood-West's claims and summary judgment on Dr. Amos's counterclaim should not be delayed during the Court's adjudication of these motions. Therefore, to the extent that these pending motions are deemed claims which would prevent the entry of final judgment by the Clerk without direction from the Court, the Court directs the Clerk to enter final judgment as explained below.

Pursuant to Federal Rule of Civil Procedure 54(b), which permits the entry of a final judgment on one or more, but fewer than all, of the asserted claims, the Court concludes that there is no just reason for delaying the entry of a final judgment on

Dr. Amos's breach of contract claim, which the Court has decided today in this order. The Court further finds no just reason for delaying further the entry of final judgment in favor of all of the Defendants in this action regarding the Court's previous orders granting all of the Defendants' motions to dismiss Youngblood-West's first amended complaint. *See* RICO Action, Order (Oct. 22, 2018), ECF No. 88; RICO Action, Order (Nov. 13, 2018), ECF No. 104.

Accordingly, the Clerk is directed to enter final judgment in favor of Dr. Amos on his breach of contract counterclaim against Youngblood-West and to enter final judgment in favor of Defendants Dr. Amos, Aflac Incorporated, Samuel W. Oates, Daniel P. Amos, and Cecil Cheves on all of Youngblood-West's claims against them in her first amended complaint. As the prevailing parties, Defendants, including Dr. Amos, shall recover their costs against Youngblood-West, but the Clerk shall not assess those costs until all of the motions that remain pending in this action have been decided by this Court.

IT IS SO ORDERED, this 27th day of March, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA