```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

| | |
|---|---|
| LEIGH ANN YOUNGBLOOD-WEST,          * | |
|     Plaintiff,                      * | |
| vs.                                 * | |
| AFLAC INCORPORATED, DANIEL P.       * | CASE NO. 4:18-CV-83 (CDL) |
| AMOS, WILLIAM LAFAYETTE AMOS, | |
| JR., CECIL CHEVES, and SAMUEL       * | |
| W. OATES, | |
|                                     * | |
|     Defendants.                     * | |

## O R D E R

Having lost her battle to undo the confidentiality provisions of a settlement agreement for which she received valuable consideration, Leigh Ann Youngblood-West now seeks the Court's permission to file an action in state court against attorneys of parties in this action for their conduct in anticipation of this litigation. Youngblood-West presumably finds it necessary to seek the Court's permission because her state court case will require disclosure of information covered by her confidentiality agreements and this Court's permanent injunction preventing the disclosure of that confidential information. Aflac, Dan Amos, and William L. Amos, Jr. ("Dr. Amos") contend that Youngblood-West's proposed state court complaint alleges claims that the Court decided in this action and that the only purpose of the state court action would be to find an avenue for disclosing the information

1

that Youngblood-West contracted not to disclose.  Thus, Aflac, Dan Amos, and Dr. Amos seek an injunction under the All Writs Act that would prevent Youngblood-West from filing her proposed state court complaint and require her to obtain the Court's permission to file any new lawsuit that involves claims arising from the same factual predicate or nucleus of operative facts alleged in the present action.  For the following reasons, Youngblood-West's motion (ECF No. 121) is denied and Aflac, Dan Amos, and Dr. Amos's motions (ECF Nos. 128 & 130) are granted to the extent described in this Order.

BACKGROUND

The Court previously set out the facts giving rise to the parties' dispute, see Order (Oct. 22, 2018), ECF No. 88, and will not repeat those facts here, except to the extent they are directly relevant to today's Order.  The Court entered final judgment in favor of Defendants in this action as to all of Youngblood-West's claims against them and in favor of Dr. Amos as to all of his claims against Youngblood-West.  Order (Mar. 27, 2019), ECF No. 145; Judgment (Mar. 27, 2019), ECF No. 146.  The Court's judgment was based on finding as a matter of law that Youngblood-West and Dr. Amos entered into enforceable settlement agreements which contained confidentiality provisions.  *See generally* Order (Mar. 27, 2019). And, the Court enjoined Youngblood-West from disclosing any information regarding the subject matter of those agreements

unless permitted to do so by Court order. *Id*. at 26. Youngblood-West filed a notice of appeal regarding the Court's judgment. Notice of Appeal (Apr. 24, 2019), ECF No. 152.

One of the claims covered by the Court's previous judgment was a claim by Youngblood-West against Aflac and Dan Amos for the intentional infliction of emotional distress based on their counsel's conduct. Specifically, Youngblood-West alleged that "[o]n March 23, 2018, Defendants Aflac and Dan[] Amos, through their counsel Alston & Bird, LLP, explicitly threatened Plaintiff's counsel 'personally,' including with criminal prosecution, lawsuits, and sanctions, if he filed the instant complaint on Plaintiff's behalf." Am. Compl. ¶ 12, ECF No. 26. And, "Defendants Aflac and Dan[] Amos repeated their explicit threats of criminal prosecution against Plaintiff and her counsel on April 15, 2018." *Id*. The complaint included a claim for intentional infliction of emotional distress based on "Defendants' misconduct." *Id*. ¶¶ 286-87. The Court found as a matter of law that "the 2018 legal threat by Dan Amos's lawyers does not support an [intentional infliction of emotional distress] claim." Order (Oct. 22, 2018), at 43.

Notwithstanding the Court's ruling on her intentional infliction of emotional distress claim, Youngblood-West seeks to file a claim in state court against Dan Amos and Aflac's lawyers for the same exact conduct that she alleged Dan Amos and Aflac

3

were liable for in this action. Mot. for Leave to File Compl. Attach. 1, Draft Compl., ECF No. 121-1 (bringing a claim against the attorneys for intentional infliction of emotional distress stemming from the threats of criminal prosecution in the March and April 2018 correspondences). Although those lawyers were never parties to this present action, their conduct was the basis of Youngblood-West's intentional infliction of emotional distress claim against Aflac and Dan Amos. The question presented by the pending motions is whether the Court has the authority to prevent her from filing this claim in state court when the litigation of it will likely result in the disclosure of information covered by the parties' confidentiality agreement and in violation of the Court's permanent injunction.

## DISCUSSION

Common sense suggests that a party should not be allowed to relitigate a futile claim which is asserted for the purpose of circumventing restrictions on her disclosure of information underlying the meritless claim. But common sense is not always dispositive of a legal issue, particularly when the issue involves potential meddling by a federal court in a party's attempt to access state courts to vindicate her rights. The law addresses the complicated issues that arise in this context through a statute with the imposing sounding name of "The All Writs Act."

4

The All Writs Act provides that "[t]he Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. And, "[t]he court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002); *Maid of the Mist Corp. v. Alcatraz Media, LLC*, 388 F. App'x 940, 942 (11th Cir. 2010) (per curiam) (noting the All Writs Act gives courts the "power to enjoin litigants who are abusing the court system by harassing their opponents"). The Court certainly has an interest in making sure that the permanent injunction it issued here is obeyed. And, it has an interest in preventing a party subject to that injunction from relitigating a claim that this Court has already decided, when the relitigation of that claim will almost certainly require revealing or drawing public attention to confidential information subject to the permanent injunction.[1]

---

[1] There is reason to believe that Youngblood-West and her counsel are motivated, at least in part, by a desire to draw attention to or reveal

Youngblood-West argues that another statute known as the "Anti-Injunction Act" prevents the Court from protecting its permanent injunction and previous judgment through an All Writs Act injunction. *See* 28 U.S.C. § 2283. "The Anti-Injunction Act . . . 'serves as a check on the broad authority recognized by the All Writs Act,'" and it prohibits a court from enjoining a state court action unless one of three exceptions applies. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1335 (11th Cir. 2014) (quoting *Burr & Forman v. Blair*, 470 F.3d 1019, 1027 (11th Cir. 2006)). Preliminarily, the Court observes that the Anti-Injunction Act does not apply to the Court's authority to issue an order *preventing* an action from being filed in the first place as opposed to *enjoining it from proceeding* after it has been filed. *See Riccard*, 307 F.3d at 1299 n.16. Here, there is no pending

---

the confidential information subject to the permanent injunction in this case. For example, the proposed state court complaint says, "Youngblood-West and her undersigned counsel remain subject to the preliminary injunction in [this] case and are not at liberty to reveal the alleged Misconduct *no matter how much they wish to*." Draft Compl. ¶ 5 (emphasis added). And, before this suit began, Youngblood-West's counsel made a public Linkedin posting stating:

> Earlier today, Aflac tried to scare me personally with extortion, securities fraud, Rule 11, disqualification, and other charges for advocating for my client wronged by Aflac and Dan Amos in the most horrific fashion. Somehow I am not scared a bit (you'll know why soon enough). F*** you, Aflac and Dan Amos (can I say that on Linkedin?), you are going down soon, you know it, and you are the ones who should be scared.

Mem. of Law in Opp'n to Pl.'s Request for Leave to File Compl. Ex. A, Email from D. Joffe to J. Grant (Mar. 23, 2018), ECF No. 129-1.

state court action that this Court would be enjoining, so the Anti-Injunction Act is arguably inapplicable. But even if the Anti-Injunction Act did apply, the relitigation exception to that Act removes any impediment to the Court's discretion in this case.

Typically, "[a]n injunction under the relitigation exception is appropriate where the state law claims would be precluded by the doctrine of [claim preclusion]." *Original Brooklyn Bagel Co. v. Bersin Bagel Grp., LLC*, 817 F.3d 719, 725 (11th Cir. 2016) (quoting *Burr & Forman*, 470 F.3d at 1029-30). Claim preclusion requires finding that four elements are met: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). That said, "'the relitigation exception is narrower' than traditional principles of claim preclusion and 'only authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court.'" *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1339 (11th Cir. 2017)(quoting *SFM Holdings*, 764 F.3d at 1336).

Here, it is clear that Youngblood-West's proposed state court intentional infliction of emotional distress claim is precluded by this Court's final judgment on that claim. The first two elements

of claim preclusion are easily met; the Court issued a final judgment on the merits of Youngblood-West's intentional infliction of emotional distress claim and properly exercised federal question jurisdiction when dismissing her complaint. *See Hidgon v. Fulton Cty., Ga.*, 746 F. App'x 796, 799 (11th Cir. 2018) (per curiam) ("A federal district court's final judgment in a lawsuit is a final judgment for the purposes of [claim preclusion].").[2]

The third element is also met because this action and the proposed state court action involve the same parties or their privies. Even though Youngblood-West did not sue the attorneys in this action, the attorneys were in privity with parties to the action. There are six circumstances in which privity exists, including, as relevant here, where a "substantive legal

---

[2] Because the Court exercised federal question jurisdiction over Youngblood-West's complaint, federal preclusion law determines the preclusive effect of its judgment. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) ("[W]e have long held that States cannot give [federal court judgments in federal question cases] merely whatever effect they would give their own judgments, but must accord them the effect this Court prescribes."). Although Georgia preclusion law apparently differs from federal law, the Court finds that the application of that state law would not prevent the issuance of injunctive relief. Under Georgia law, a court's final judgment is suspended for preclusion purposes while that judgment is appealed. *See CS-Lakeview at Gwinnett, Inc. v. Retail Dev. Partners*, 602 S.E.2d 140, 142 (Ga. Ct. App. 2004); *see also Ames v. J.P. Morgan Chase Bank, N.A.*, 623 F. App'x 983, 986 (11th Cir. 2015) (per curiam) ("Georgia is, apparently, among the minority of states that treat a lower court judgment on appeal as not final for purposes of collateral estoppel or res judicata." (quoting *Cox. v. Mayan Lagoon Estates, Ltd.*, 734 S.E.2d 883, 890 n.8 (Ga. Ct. App. 2012))). But, the Court can conceive of no legitimate reason why it could not prevent Youngblood-West from filing the state court action during the pendency of her appeal considering the likelihood that the Court's judgment will soon become final.

relationship existed between the party to be bound and a party to the judgment." *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010). This legal relationship can arise from an agency or employment relationship when the plaintiff brings claims against a principal under a theory of respondeat superior based on the conduct of its agent. *See Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990) (agreeing with other circuits that "employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued" (quoting *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989))); *Sealey v. Branch Banking & Tr. Co.*, 693 F. App'x 830, 835 (11th Cir. 2017) (per curiam) (finding a substantive legal relationship existed based on an employment relationship when the plaintiff sued the employer for vicarious liability based on the same conduct that supported his prior claim against the employees). Here, Youngblood-West sought to have the attorneys' principals, Dan Amos and Aflac, held liable under principles of respondeat superior for the very same conduct that supports her claims against the attorneys individually in the proposed state court action. Therefore, the attorneys are in privity with Dan Amos and Aflac by virtue of their agency relationship.

Finally, Youngblood-West's proposed state court intentional infliction of emotional distress claim is based on the exact same

9

conduct underlying her unsuccessful claim in this Court—sending the March and April 2018 threatening correspondence. The Court actually decided the issues presented by the proposed state court complaint when it ruled that "the 2018 legal threat by Dan Amos's lawyers does not support an [intentional infliction of emotional distress] claim." Order (Oct. 22, 2018), at 43. Youngblood-West now argues that the Court did not decide whether the attorneys' threats of *criminal prosecution*, as opposed to *civil litigation*, in the March and April 2018 correspondences rose to the level of extreme and outrageous conduct. But, it is clear when reading the Court's full Order that "the 2018 legal threat" encompassed all the threats made in the March and April 2018 correspondences, including the threats of criminal prosecution. *See id*. at 23 (referencing "Aflac and Dan Amos's threats of criminal prosecution in their March and April 2018 responses to Plaintiff's settlement demand letter"); *id*. at 31 (noting Youngblood-West alleged that "Defendants threatened to criminally prosecute Plaintiff in 1992 and 2018"). Youngblood-West also argues that the relitigation exception does not apply because the Court did not decide whether the attorneys' threats of criminal prosecution violated the rules of professional conduct, as she states in her proposed state court complaint. But, the proposed state court complaint includes no claim for an alleged violation of ethics rules. Its only claim is for intentional infliction of emotional distress—the exact same

10

claim this Court already decided. And, the alleged ethical violation is premised on the exact same factual allegations that were presented to this Court. Therefore, the claims and issues Youngblood-West's proposed state court complaint asks that court to decide were all previously presented to and decided by this Court, and the relitigation exception to the Anti-Injunction Act applies.

To summarize, the Court finds that Youngblood-West's proposed state court action would be precluded by this Court's judgment and is therefore futile. Thus, there is reason to believe its only purpose is to disclose matters that are prevented from being disclosed pursuant to the parties' enforceable agreement, this Court's final judgment, and this Court's permanent injunction. Accordingly, the Court finds it appropriate to prevent the filing of that action. Further, based on the present record, the Court finds that Youngblood-West and her counsel are likely to search for other ways to circumvent the Court's Orders, and thus she should be required to seek permission from the Court before she files any future action related to the same subject matter as this action.

## CONCLUSION

Based on the foregoing, the Court denies Youngblood-West's motion to file her state court action (ECF No. 121). The Court further grants Aflac, Dan Amos, and Dr. Amos's motions for

permanent injunction (ECF Nos. 128 & 130) to the extent that Youngblood-West must obtain permission from this Court before filing any new action that involves claims arising from the same factual predicate or nucleus of operative facts alleged in the present action.

IT IS SO ORDERED, this 1st day of May, 2019.

S/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA